KINDRA DENEAU (State Bar No. 024156)
7135 East Camelback Rd., Suite 230
Scottsdale, Arizona 85251
Telephone:  (480) 306-5977
Facsimile:  (602) 626-3504

*Of Counsel to*
Lemberg & Associates LLC
A Connecticut Law Firm
1100 Summer Street
Stamford, CT  06905
Telephone:  (203) 653-2250
Facsimile:  (203) 653-3424

Attorneys for Plaintiff,
Cynthia Akason

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Akason, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| GC Services, L.P.; and DOES 1-10, inclusive, | |
| Defendants. | |

For this Complaint, the Plaintiff, Cynthia Akason, by undersigned counsel, states as follows:

## JURISDICTION

1. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the invasions of Plaintiff's personal privacy by the Defendants and its agents in their illegal efforts to collect a consumer debt.

2. Original and supplemental jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business here and a substantial portion of the acts giving rise to this action occurred here.

## PARTIES

4. The Plaintiff, Cynthia Akason (hereafter "Plaintiff"), is an adult individual residing in Mesa, AZ, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

5. The Defendant, GC Services, L.P. (hereafter "GC"), is a company with an address of 6330 Gulfton, Houston, TX 77081, operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

6. Does 1-10 (the "Collectors") are individual collectors employed by GC and whose identities are currently unknown to the Plaintiff. One or more of the Collectors may be joined as parties once their identities are disclosed through discovery.

7. GC at all times acted by and through one or more of the Collectors.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### A. The Debt

8. The Plaintiff incurred a student loan financial obligation (the "Debt") to an original creditor (the "Creditor").

9. The Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

10. The Debt was purchased, assigned or transferred to GC for collection, or GC was employed by the Creditor to collect the Debt.

11. The Defendants attempted to collect the Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

### B. GC Engages in Harassment and Abusive Tactics

12. Plaintiff works as a licensed family counselor for Gila River Behavioral Health- a non-profit organization that provides services to Native Americans.

3

13. GC called Plaintiff's employer's human resources department, disclosed the student loan debt, the default status of the debt, and demanded and acquired private income information about Plaintiff under the alleged legal right to immediately collect garnishment of Plaintiff's wages.

14. Contrary to the statements and demand GC made to Plaintiff's employer, GC has not served Plaintiff with any legal process and is not authorized to garnish her wages.

15. In addition to calling Plaintiff's employer's human resources department, GC has also called Plaintiff directly on her work line on three occasions.

16. The first time GC called her on her work line she asked GC to stop calling her at work and asked GC to instead call her on her cell phone number, which she provided to GC.

17. GC ignored Plaintiff's request to only call her on her personal line and continued to interrupt her by calling her at work.

18. On the last phone call Plaintiff received at work, the GC male representative threatened and intimidated Plaintiff. More specifically, after Plaintiff informed him she was in her office with a client and that she could not speak at that time, the GC representative threatened that if she hung upon him his boss would get her stripped of her family counseling license so that she would no longer be able to work in addition to garnishing her wages.

4

19. The GC representative claimed that GC would have the authority to strip her of her license because the Debt involves a State/Federal loan and not just a private loan.

20. The GC representative further threatened that Plaintiff would never be able to get another student loan and demanded payment of $990 within 4 days time or else two payments of $990 within the month of January 2011 would be required to prevent GC from immediately garnishing Plaintiff's wages and of stripping Plaintiff of her family counseling license.

21. Plaintiff was extremely embarrassed that a client witnessed the telephone conversation she was forced to participate in under duress.

22. Plaintiff was so disturbed by the telephone call she went and asked her boss whether she would still have a job if she lost her license, and her boss informed her that she would in fact be terminated if she lost her license.

23. Although GC has threatened to garnish Plaintiff's wages in an attempt to collect the Debt, no such action has been taken to date.

24. Although GC has threatened to strip Plaintiff of her family counseling license, GC has taken no such action to date.

25. GC called client's friend living in Lake Havasu more than once about the Debt and disclosed details about the Debt to her.

26. GC called Plaintiff's Uncle in Washington state and disclosed the existence of a Debt to him. In turn, the Uncle called Plaintiff's mother and disclosed the Debt and the telephone call from GC to Plaintiff's mother.

27. GC called Plaintiff's deceased friend Ann's husband Allen about the Debt.

28. GC did not send Plaintiff a "30-Day Validation Notice" within five days of its initial communication with Plaintiff.

### C. Plaintiff Suffered Actual Damages

29. The Plaintiff has suffered and continues to suffer actual damages as a result of the Defendants' unlawful conduct.

30. As a direct consequence of the Defendants' acts, practices and conduct, the Plaintiff suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment.

31. The Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

# COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692, et seq.

32.  The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

33.  The Defendants contacted third parties and failed to identify themselves and further failed to confirm or correct location information, in violation of 15 U.S.C. § 1692b(1).

34.  The Defendants informed third parties of the nature of Plaintiff's debt and stated that the Plaintiff owed a debt, in violation of 15 U.S.C. § 1692b(2).

35.  The Defendants contacted third parties in regards to the Plaintiff's debt on numerous occasions, without being asked to do so, in violation of 15 U.S.C. § 1692b(3).

36.  The Defendants contacted the Plaintiff at a place and during a time known to be inconvenient for the Plaintiff, in violation of 15 U.S.C. § 1692c(a)(1).

37.  The Defendants contacted the Plaintiff at her place of employment, knowing that the Plaintiff's employer prohibited such communications, in violation of 15 U.S.C. § 1692c(a)(3).

38.  The Defendants communicated with individuals other than the Plaintiff, the Plaintiff's attorney, or a credit bureau, in violation of 15 U.S.C. § 1692c(b).

39.  The Defendants used profane and abusive language when speaking with the consumer, in violation of 15 U.S.C. § 1692d(2).

40.  The Defendants caused a phone to ring repeatedly and engaged the Plaintiff in telephone conversations, with the intent to annoy and harass, in violation of 15 U.S.C. § 1692d(5).

41.  The Defendants placed calls to the Plaintiff without disclosing the identity of the debt collection agency, in violation of 15 U.S.C. § 1692d(6).

42.  The Defendants falsely represented to the Plaintiff that it was affiliated with the United States or a government entity, in violation of 15 U.S.C. § 1692e(1).

43.  The Defendants misrepresented the character, amount and legal status of the debt, in violation of 15 U.S.C. § 1692e(2).

44.  The Defendants threatened the Plaintiff with garnishment if the debt was not paid, in violation of 15 U.S.C. § 1692e(4).

45.  The Defendants threatened to take legal action, without actually intending to do so, in violation of 15 U.S.C. § 1692e(5).

46.  The Defendants employed false and deceptive means to collect a debt, in violation of 15 U.S.C. § 1692e(10).

47.  The Defendants failed to inform the consumer that the communication was an attempt to collect a debt, in violation of 15 U.S.C. § 1692e(11).

48.  The Defendants attempted to collect an amount not authorized by the agreement creating the debt, in violation of 15 U.S.C. § 1692f(1).

49.  The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

50.  The Plaintiff is entitled to damages as a result of the Defendants' violations.

## COUNT II

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

51.  The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52.  The Restatement of Torts, Second, § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

53.  Arizona further recognizes the Plaintiff's right to be free from invasions of privacy, thus Defendant violated Arizona state law.

54.  The Defendant intentionally intruded upon Plaintiff's right to privacy by continually harassing the Plaintiff with excessive phone calls and unlawful threats, including excessive calls to Plaintiff's place of employment, friends, and family.

55.  The telephone calls made by Defendants to the Plaintiff were so persistent and repeated with such frequency as to be considered, "hounding the plaintiff," and, "a

9

substantial burden to her existence," thus satisfying the Restatement of Torts, Second, § 652(b) requirement for an invasion of privacy.

56. The conduct of the Defendants in engaging in the illegal collection activities resulted in multiple invasions of privacy in such a way as would be considered highly offensive to a reasonable person.

57. As a result of the intrusions and invasions, the Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendants.

58. All acts of Defendants and its agents were committed with malice, intent, wantonness, and recklessness, and as such, Defendants are subject to punitive damages.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

60. The acts, practices and conduct engaged in by the Defendants vis-à-vis the Plaintiff was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

61. The foregoing conduct constitutes the tort of intentional infliction of emotional distress under the laws of the State of Arizona.

62. As a result of the Defendants' intentional infliction of emotional distress, the Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendants.

63. All acts of Defendants and its agents were committed with malice, intent, wantonness, and recklessness, and as such, Defendants are subject to punitive damages.

## COUNT IV

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

64. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. Defendants intentionally interfered with Plaintiff's employment contract by improperly contacting Plaintiff at her place of employment during her regular work hours.

66. As a result of Defendants' intentional interference with contractual relations, the Plaintiff's employment relationship was disrupted and Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendants.

67. All acts of Defendants and the Collectors complained of herein were committed with malice, intent, wantonness, and recklessness, and as such, Defendants are subject to imposition of punitive damages.

# **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays that judgment be entered against the Defendants:

A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendants;

B. Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against the Defendants;

C. Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendants;

D. Actual damages from the Defendants for the all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent FDCPA violations and intentional, reckless, and/or negligent invasions of privacy and interference with contractual relations in an amount to be determined at trial for the Plaintiff;

E. Punitive damages;

F. For Plaintiff's statutory costs in relation to Arizona claim(s) pursuant to A.R.S. § 12-341;

G. For Plaintiff's reasonable attorneys' fees and costs in relation to any Arizona contract claim pursuant to A.R.S. § 12-341.01; and

H. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED: February 17, 2011                KINDRA DENEAU


By: _/s/  Kindra Deneau_
Kindra Deneau

Attorney for Plaintiff
Cynthia Akason